IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| ESSIE JAMES and WILLIAM JAMES, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 15-2297-STA-cgc |
| | ) | |
| PETRA FINANCE, LLC; CLEAR SPRINGS LOAN SERVICES, INC.; NATIONAL HOUSING PROTECTION AGENCY, INC.; and RUBIN LUBLIN TN, P.L.L.C., | ) ) ) ) ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS
ORDER REMANDING REMAINING CLAIMS TO STATE COURT**

Before the Court is Defendants Petra Finance, LLC; Clear Springs Loan Service, Inc.; and Rubin Lublin TN, P.L.L.C.'s Motion to Dismiss (ECF No. 6) filed on May 18, 2015. Plaintiffs Essie James and Williams James have responded in opposition, and Defendants have filed a reply brief. This matter was transferred to the undersigned for all further proceedings on September 8, 2015. For the reasons set forth below, the Motion to Dismiss is **GRANTED IN PART**. Plaintiffs' claims under Tennessee law are remanded to state court.

**BACKGROUND**

On March 4, 2015, Plaintiffs filed their Petition to enjoin a foreclosure sale and for rescission of a loan agreement and complaint for money damages ("the Complaint") in the Chancery Court for Shelby County, Tennessee for the Thirtieth Judicial District at Memphis.

On May 5, 2015, Defendants removed Plaintiff's Complaint to this Court because federal question jurisdiction exists over Plaintiffs' TILA claim and supplemental jurisdiction over the remaining claims.

Plaintiffs' Complaint alleges the following well-pleaded facts, which the Court accepts as true for purposes of Defendants' Motion to Dismiss. Plaintiffs are residents of 2245 Montego Drive, Cordova, Tennessee. (Compl. ¶¶ 4, 5.) Plaintiffs purchased the home at that address on October 31, 2005, and executed loan documents with First NLC Financial Services, LLC to finance the purchase. (*Id.* ¶ 10.) NLC Financial Services, LLC is not a party to this action. Liberty Lending, a mortgage brokerage, arranged the Plaintiffs' financing. (*Id.* ¶ 13.) A friend had referred Plaintiffs to Reginald Parham ("Parham"), a mortgage broker with Liberty Lending. (*Id.* ¶ 14.) Parham made all the arrangements for the transaction, including selecting the lender, the type of loan, and the closing agent. (*Id.* ¶ 15.) Liberty Lending and Reginald Parham are not parties to this action.

Plaintiffs' loan was an 80/20, first- and second-mortgage loan, meaning the first mortgage in the amount of $136,650.00 constituted 80% of the principal and the second mortgage in the amount of $33,442.10 accounted for 20% of the principal. (*Id.* ¶¶ 16-18.) Liberty Lending received a broker's fee of $6,186.89 for arranging the loan, and Plaintiffs were charged $4,136.94 from the loan proceeds as a broker's fee. (*Id.* ¶¶ 19, 20.) In addition to these fees, NLC Financing services paid Liberty Lending a "yield spread premium" of $2,049.75 outside of closing. (*Id.* ¶ 21.) According to the Complaint, a yield spread premium is a euphemism for a kickback paid by a lender to a mortgage broker for a loan that is more profitable to the lender than the one for which the borrower is qualified. (*Id.* ¶ 22.) The excess profit for the lender is generally in the form of higher interest rates and excessive fees associated

with the loan. (*Id.* ¶ 23.) In all, Liberty Lending received a fee equivalent to 3.6% of the loan amount. (*Id.* ¶ 24.) Tennessee Department of Financial Institutions regulations provide that a fee in excess of 2% of the loan amount is excessive and grounds for revocation of the mortgage broker's license. (*Id.* ¶ 25.)

The Complaint alleges that Plaintiffs' loan had other predatory features as well. (*Id.* ¶ 26.) The first mortgage loan was a 30-year adjustable rate mortgage ("ARM") with an artificially low teaser rate for the first two years of the loan, what was known in subprime lending circles as a 2/28 loan. (*Id.* ¶¶ 27, 28.) The interest rate on Plaintiffs' first mortgage was 7.4% for the first two years. (*Id.* ¶ 29.) Effective November 1, 2007, the interest rate on Plaintiffs' first mortgage would rise to 7.15% plus the applicable index, the LIBOR index which was a six-month average of interbank lending rates. (*Id.* ¶ 30.) The interest rate would continue to change at six-month intervals for the remaining 28 year-term of the first mortgage. (*Id.* ¶ 31.) The maximum interest rate for the loan was 14.40%, and the minimum interest rate was 7.4%. (*Id.* ¶ 34.) The effective annual percentage rate estimated in the Truth-in-Lending disclosure statement was 11.04%. (*Id.* ¶ 37.)

For the first 24 months of the first mortgage loan, the principal and interest payment on the loan was $948.14. (*Id.* ¶ 38.) On November 1, 2007, the principal and interest payment would rise to $1,228.83, an increase of almost $300 per month. (*Id.* ¶ 39.) Based on estimates at closing, the principal and interest payment would rise to $1,337.49 at the next change date six months after November 1, 2007, an increase of almost $400 per month over the original payment. (*Id.* ¶ 40.) The principal and interest payment did not include escrow for property taxes or insurance. (*Id.* ¶ 41.) The second mortgage loan was a 15-year balloon note with an interest rate of 10.71%. (*Id.* ¶ 35.) Under the terms of the loan, Plaintiffs made what were

virtually interest-only payments for 179 months and then a final balloon payment of $28,759.13. (*Id.* ¶ 36.) The monthly payments on the second mortgage loan were $318.78. (*Id.* ¶ 42.)[1]

Equity Title and Escrow Company of Memphis, LLC ("Equity Title") closed the loan on Plaintiffs' property. (*Id.* ¶ 47.) Equity Title is not a party to this action. According to the Complaint, Equity Title is now defunct but closed thousands of subprime and predatory loans prior to 2007 and was known for doing whatever was necessary to facilitate the closing of exploitative loans. (*Id.* ¶ 48.) The Equity Title representative who conducted Plaintiffs' closing did not explain any of the features of Plaintiffs' loan to them. (*Id.* ¶ 49.) Instead the representative just rushed Plaintiffs through the closing paperwork and instructed Plaintiffs where to sign the documents. (*Id.*) Plaintiffs allege that they did not understand that financing arrangements would result in their payments rising over the term of loans. (*Id.* ¶ 45.) Plaintiffs could not afford their payment, and Parham obfuscated and concealed the details of the transaction from Plaintiffs. (*Id.* ¶¶ 44, 45.) Plaintiffs also did not understand that their second mortgage was a balloon note and that they would owe a lump sum of $28,759.13 after fifteen years of making monthly payments. (*Id.* ¶ 46.)

Although NLC Financial Services provided the loans, NLC immediately transferred the servicing of the second mortgage to Ocwen. (*Id.* ¶ 50.) NLC also transferred the servicing of the first mortgage to GMAC Mortgage, LLC ("GMAC"). (*Id.* ¶ 51.) Plaintiffs did not receive notice of the transfer of ownership to GMAC. (*Id.* ¶ 52.) At some time around the first interest rate change on the first mortgage, about two years into repayment, GMAC caused to be recorded a fixed rate loan modification agreement, converting Plaintiff's adjustable rate first mortgage to a fixed rate mortgage at 7.4% interest and a monthly principal and interest payment of $1,148.84.

---

[1] The Complaint alleges in another paragraph that the monthly payment on the second mortgage was $319.78. (Compl. ¶ 46.) The Court finds that this very minor discrepancy is not material to the analysis of the pleadings or Defendants' Rule 12(b)(6) Motion.

(*Id.*)  Despite the fact that Plaintiffs had been paying on the loan for two years, the principal amount of the loan balance had increased from $136,650 to $162,687.61, a difference of $26,037.61.  (*Id.* ¶ 53.)  By that time, the balance of Plaintiffs' first and second mortgage loans was considerably more than the value of their property and put them in the position of being seriously "underwater" and unable to sell or refinance their home.  (*Id.* ¶ 54.)  This also meant that Plaintiffs could not build equity in the property and would still owe the balloon payment at the end of the term for their second mortgage.  (*Id.* ¶ 55.)  Plaintiffs agreed to the modification with GMAC out of desperation.  (*Id.* ¶ 56.)

Plaintiffs subsequently filed a chapter 13 bankruptcy case and made regular payments under their bankruptcy plan.  (*Id.* ¶¶ 57, 58.)  When GMAC filed for chapter 11 bankruptcy, the servicing on Plaintiffs' loan changed hands several more times but without proper notice of the transfers to Plaintiffs.  (*Id.* ¶¶ 65, 66.)  Plaintiffs' loan was last being serviced by Defendant Clear Springs Loan Service, Inc. ("Clear Springs").  (*Id.* ¶ 67.)  It was about this time that Plaintiffs first learned of the Home Affordable Modification Program ("HAMP") that was designed to reduce mortgage payments and provide other relief for mortgage borrowers at risk of foreclosure.  (*Id.* ¶¶ 59, 61.)[2]

Plaintiffs heard about Defendant National Housing Protection Agency ("NHPA") in an advertisement and believed that NHPA could assist them in getting a HAMP loan modification.  (*Id.* ¶ 68.)  Plaintiffs also believed that NHPA was a government agency when in fact NHPA is a for-profit corporation.  (*Id.* ¶ 69.)  Plaintiffs paid NHPA a fee and received assurances that NHPA would help them get a loan modification.  (*Id.* ¶ 70.)  NHPA informed Plaintiffs they would need to dismiss their bankruptcy case in order to be eligible for HAMP relief.  (*Id.* ¶ 71.)

---

[2]  The Complaint includes additional allegations describing the creation and administration of HAMP.  Compl. ¶¶ 61-64.  The Court finds it unnecessary to review these allegations for purposes of deciding the Motion to Dismiss.

5

NHPA also instructed Plaintiffs to withhold their regular mortgage payments while the loan modification application was pending. (*Id.* ¶ 72.) NHPA ultimately informed Plaintiffs that they had been granted a modification and that they could pay off the loan for the sum of $15,000.00. (*Id.* ¶ 74.) Plaintiffs thereafter began to receive notices that their home was going into foreclosure. (*Id.* ¶ 75.) Despite several attempts to contact NHPA and Clear Springs, Plaintiffs have been unable to get information about the status of their loan modification. (*Id.* ¶ 76.)

Plaintiffs received a notice of foreclosure sale from Defendant Rubin Lublin TN, P.L.L.C. ("Rubin Lublin"), noticing a foreclosure sale for March 5, 2015. (*Id.* ¶ 77.) The notice stated that Defendant Petra Finance, LLC ("Petra") owned the beneficial interest in the deed of trust associated with Plaintiffs' first mortgage and that Petra had appointed Rubin Lublin as substitute trustee. (*Id.* ¶ 78.) Plaintiffs have had no dealings with Petra and had not received prior notice that Petra had become the owner of the mortgage. (*Id.* ¶ 79.) The Shelby County Register of Deeds has no record of an assignment of Plaintiffs' deed of trust to Petra. (*Id.* ¶ 80.)[3]

From these premises, Plaintiffs allege claims for fraud in the inducement; violation of Regulation Z of the Truth in Lending Act ("TILA"); intentional or negligent misrepresentation; breach of contract/breach of the covenant of good faith and fair dealing; and violations of the Tennessee Consumer Protection Act ("TCPA"). Plaintiffs seek the rescission of their promissory notes and deed of trust as well as money damages.

### STANDARD OF REVIEW

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the pleadings as true

---

[3] The Court further addresses this specific allegation below. Because the written instrument contradicts Plaintiffs' claim about the assignment not being recorded, the Court does not accept Plaintiffs' allegation as true.

and construe all of the allegations in the light most favorable to the non-moving party.[4] However, legal conclusions or unwarranted factual inferences need not be accepted as true.[5] "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim."[6] Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[7] Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[8] In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."[9] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10]

## ANALYSIS

The Court holds that the Complaint fails to state a TILA claim, the only cause of action over which this Court has original jurisdiction. As a result, Defendants' Motion to Dismiss will

---

[4] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992).

[5] *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

[6] *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

[7] Fed. R. Civ. P. 8(a)(2).

[8] *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). *See also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly,* 550 U.S. at 555).

[9] *Twombly*, 550 U.S. at 555, 570.

[10] *Iqbal*, 556 U.S. at 678.

be granted but only as to Plaintiffs' TILA claim. The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining claims under Tennessee law. Therefore, those claims will be remanded to state court.

**I. Truth in Lending Act**

The Complaint alleges that Petra violated TILA's disclosure requirement when Petra failed to give Plaintiffs notice of the assignment of their loan in 2011.[11] "TILA requires that creditors make certain disclosures as to the terms of lending arrangements and provides for civil liability for failure to comply with its provisions."[12] Among the disclosures required under the Act, a creditor that becomes the new owner or assignee of a mortgage loan must give the borrower written notice within 30 days of the sale, transfer, or assignment of the loan.[13] The written notice must include the identity and contact information of the new creditor, the date of the transfer, instructions on how to reach a party with authority to act on behalf of the new creditor, the location of the place where the transfer of ownership is recorded, and other relevant information.[14]

The issue presented is whether Plaintiffs' TILA claim against Petra is now time-barred. As a general matter, a statute of limitations is an affirmative defense under Federal Rule of Civil Procedure 8(c), and typically is an inappropriate basis for dismissal on a Rule 12(b)(6) motion.[15]

---

[11] *See* Compl., Prayer for Relief ¶ 6 (ECF No. 1-1) ("That the Court enter judgment against Defendant Petra Finance and in favor of Plaintiffs for damages resulting from their failure to provide the notification required by [TILA] and Regulation Z promulgated pursuant thereto, including attorney fees.").

[12] *United States v. Petroff-Kline*, 557 F.3d 285, 294 (6th Cir. 2009).

[13] 15 U.S.C. § 1641(g)(1).

[14] *Id.*

[15] *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012).

But when the allegations on the face of the complaint show that the claim is time-barred, dismissal under Rule 12(b)(6) is proper.[16] The Sixth Circuit has held that a plaintiff has an "obligation" to plead facts in avoidance of the statute of limitations when "the face of the complaint discloses a failure to file within the time allowed."[17] In other words, where a complaint "affirmatively indicates that the time limit for bringing the claim has passed," the plaintiff cannot "escape the statute by saying nothing."[18] In this case, Plaintiffs seek only money damages arising out of Defendant's purported TILA violation for failure to disclose the assignment of Plaintiffs' the deed of trust in January 2011. A claim for damages under TILA is subject to a one-year statute of limitations: "any action under [TILA] may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."[19] The Sixth Circuit has opined that TILA "creates a cause of action and confers jurisdiction on federal courts to hear cases arising under the statute. That jurisdiction is defined and circumscribed by the Act itself, in a temporal as well as substantive sense. If a complaint is not filed within the time period prescribed by 15 U.S.C. § 1640(e), a federal court has no jurisdiction to entertain it."[20]

---

[16] *Jones v. Bock*, 549 U.S. 199, 215 (2007).

[17] *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516 (6th Cir. 2008) ("It is not enough for plaintiffs to argue that the complaint, because it is silent as to when they first acquired actual knowledge must be . . . construed as not precluding the possibility that they will be able to prove facts establishing their entitlement to relief.").

[18] *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992).

[19] 15 U.S.C. § 1640(e); *Rautu v. U.S. Bank*, 557 F. App'x 411, 416 (6th Cir. 2014).

[20] *Gray v. Home Bank of Tenn.*, 47 F.3d 1168 (6th Cir. 1995) (quoting *Rust v. Quality Car Corral, Inc.*, 614 F.2d 1118, 1119 (6th Cir. 1980)).

The Court holds that Plaintiffs' TILA claim is now time-barred. Defendants have produced a copy of the assignment to Petra, which is dated December 22, 2010, and was recorded with the Shelby County Register on January 27, 2011.[21] Pursuant to 15 U.S.C. § 1641(g)(1), Petra had 30 days from December 22, 2010, in which to give Plaintiffs notice of the assignment. The Complaint plausibly alleges that Petra failed to give the required notice within that time frame. For purposes of the TILA statute of limitations, Plaintiffs then had "one year from the date of the occurrence of the violation" in which to bring their judicial complaint. Plaintiffs did not file suit over the alleged TILA violation until March 4, 2015, more than three years after the statute of limitations had expired. Therefore, the Court concludes that Plaintiffs' TILA claim is now untimely.

In their opposition to the Motion to Dismiss, Plaintiffs argue that their TILA claim is subject to the discovery rule. The United States Supreme Court has defined the discovery rule as "a doctrine that delays accrual of a cause of action until the plaintiff has 'discovered' it."[22] Tracing the historical roots of the doctrine to actions sounding in fraud, the Supreme Court explained that "where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is *discovered*."[23] Under the modern discovery rule, a claim will "accrue when the

---

[21] Assignment, ex. D to Defs.' Mot. to Dismiss (ECF No. 6-5). The Court may consider the assignment because "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (citing 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1327, at 762 (2d ed. 1990)). These requirements are certainly met in this case.

[22] *Merck & Co. v. Reynolds*, 559 U.S. 633, 644 (2010).

[23] *Id.* at 644-45 (quoting *Holmberg v. Armbrecht,* 327 U.S. 392, 397 (1946)) (emphasis in original).

litigant first knows *or with due diligence should know* facts that will form the basis for an action."[24] Although "TILA is a remedial statute and should be construed liberally in favor of the consumer,"[25] there is some question as to whether TILA's statute of limitations is subject to the discovery rule.[26] The Sixth Circuit has held that the doctrine of equitable tolling applies to TILA's one-year statute of limitations in cases of fraudulent concealment, a doctrine which does not appear to apply in this case.[27] The Sixth Circuit has never squarely addressed whether TILA's statute of limitations, 15 U.S.C. § 1640(e), allows for the application of the general discovery rule.

Assuming that the discovery rule applies in the TILA context, the Court holds that Plaintiffs have not shown why the discovery rule would save their facially untimely TILA claim. The assignment of Plaintiffs' deed of trust was filed with the Shelby County Register in January

---

[24] *Id.* at 645 (citations omitted).

[25] *Jones v. TransOhio Sav. Ass'n*, 747 F.2d 1037, 1040 (6th Cir. 1984).

[26] *Humphreys v. Bank of Am. Corp.*, No. 11-2514-STA-tmp, 2012 WL 1022988, at *10 (W.D. Tenn. Mar. 26, 2012), rev'd on other grounds, 557 F. App'x 416 (6th Cir. 2014) ("The Sixth Circuit has characterized § 1640(e) as a statute of limitations, thereby rendering the discovery rule applicable."). *But see Arroyo v. PHH Mortg. Corp.*, No. 13-CV-2335 JS AKT, 2014 WL 2048384, at *12 (E.D.N.Y. May 19, 2014); *Veres v. Wells Fargo Bank, N.A.*, No. 12-CV-03119-REB-KLM, 2014 WL 1133186, at *8 (D. Colo. Mar. 21, 2014); *Polkampally v. Countrywide Home Loans Inc.*, No. CIV. 13-174 RBK/JS, 2013 WL 5937000, at *6 (D.N.J. Nov. 6, 2013); *Wiseman v. First Mariner Bank*, No. CIV.A. ELH-12-2423, 2013 WL 5375248, at *27 (D. Md. Sept. 23, 2013); *McAnaney v. Astoria Fin. Corp.,* No. 04–CV–1101, 2007 WL 2702348, at *6 (E.D.N.Y. Sept. 12, 2007); *Johnson v. Scala,* No. 05–CV–5529, 2007 WL 2852758, at *3 (S.D.N.Y. Oct. 1, 2007) ("Case law supports the notion that the statute of limitations for TILA claims does not start running upon the discovery of the non-disclosure, but, rather, upon the funding of the loan." (collecting cases)).

[27] *Jones* , 747 F.2d at 1041 ("[W]e hold that the statute is subject to equitable tolling. For application of the doctrine of fraudulent concealment, the one year period will begin to run when the borrower discovers or had reasonable opportunity to discover the fraud involving the complained of TILA violation. "); *see also Borg v. Chase Manhattan Bank USA, N.A.*, 247 F. App'x 627, 633 (6th Cir. 2007) (same). Plaintiffs have not alleged fraudulent concealment or any other grounds for equitable tolling based on any deceptive act taken by Petra.

2011. Under the discovery rule, "a hypothetical reasonably diligent plaintiff would have discovered" the assignment within the limitations period because it was available as a matter of public record since January 2011.[28] Plaintiffs have alleged no facts to show how they were diligent in discovering their claim or why despite their diligence they were prevented from discovering the assignment.[29] In fact, the Complaint alleges that the assignment was not found in the records of the Shelby County Register at all. Plaintiffs' allegation is not entitled to any presumption of truth because the written instrument itself contradicts the allegation and therefore "trumps" any fact pleading to the contrary.[30] The Court holds that the discovery rule would not save Plaintiffs' facially time-barred TILA claim.[31] Therefore, Defendants' Motion to Dismiss is **GRANTED** as to this claim.

## II. Supplemental Jurisdiction Over Plaintiffs' Remaining Claims

As for Plaintiffs' remaining claims under Tennessee law, the Court assumes without

---

[28] *Reynolds*, 559 U.S. at 646-47 ("[D]iscovery of the facts constituting the violation occurs not only once a plaintiff *actually* discovers the facts, but also when a hypothetical reasonably diligent plaintiff would have discovered them.") (internal quotation marks omitted).

[29] *Coyer v. HSBC Mortg. Servs., Inc.*, 701 F.3d 1104, 1109 (6th Cir. 2012) (dismissing TILA claim as time-barred on the pleadings showed that the plaintiffs TILA claim accrued more one than one year before they filed suit); *Rautu*, 557 F. App'x at 416 (affirming dismissal of a TILA claim as time-barred where the plaintiff did not allege "when he discovered [the TILA violation or ] . . . what precluded him from discovering th[e] fact[s] [supporting his TILA claim]).

[30] *Creelgroup, Inc. v. NGS Am., Inc.*, 518 F. App'x 343, 347 (6th Cir. 2013) (citations omitted).

[31] Plaintiffs have also made a passing request to amend their pleadings in case the Court finds that the Complaint "has not adequately pled any cause of action . . . ." Pls.' Resp. in Opp'n 2 (ECF No. 18). Plaintiffs made their request in a single sentence in their brief as an alternative to dismissal, did not file a proposed amended complaint, and have taken no further action in the four months since they raised the request to seek leave to amend. Plaintiffs' request is denied. *Scrap Yard, LLC v. City of Cleveland*, 513 F. App'x 500, 507 (6th Cir. 2013); *Patterson v. Novartis Pharm. Corp.*, 451 F. App'x 495, 499 (6th Cir. 2011) (citing *Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 853 (6th Cir. 2006)).

deciding that it has supplemental jurisdiction over each claim. "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[32] It is settled law that the district court may exercise supplemental jurisdiction over state law claims, even after the basis for removal to federal court has been eliminated, "if recommended by a careful consideration of factors such as judicial economy, convenience, fairness, and comity."[33] Still, district courts may decline to exercise supplemental jurisdiction over a related claim if

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.[34]

Generally, if a federal claim is dismissed before trial, the state claims should be dismissed as well.[35]

Having dismissed Plaintiffs' only federal claim for relief, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining claims under Tennessee law. Rather than dismiss the state claims, the Court finds good cause to remand the claims to the Shelby County Chancery Court where Plaintiffs initiated this action. Therefore, Plaintiffs' remaining claims are remanded to Shelby County Chancery Court.

---

[32] 28. U.S.C. § 1367(a).

[33] *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988).

[34] § 1367(c).

[35] *Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

## CONCLUSION

The Court holds that Plaintiffs' TILA claim is time-barred from the face of the Complaint. Therefore, Defendants' Motion to Dismiss is **GRANTED** as to this claim. The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. The Court hereby remands these claims back to the Shelby County Chancery Court.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: November 17, 2015.